McCord, Respondent, vs. Hill, Appellant.

*February 26—March 21, 1903.*

Res judicata: *Decision on former appeal: Binding effect: Public lands: Commutation of entry: Decision by local land officers: Fraud in proofs: Holding of land department construed: Contested entry: Purchase from entryman: Estoppel of defeated contestant: Constructive trust: Preference right of entry: Premature commutation.*

1. A decision of this court, upon questions raised by demurrer, as to the rights of the parties upon thé facts as stated in the complaint, becomes the law of the case, both for the trial court and for this court, at all subsequent stages, except so far as the situation disclosed by the complaint and then considered is modified, by the introduction of evidence or otherwise, in respects material to the conclusions then reached.

2. Upon an application to commute a homestead entry of public lands into a pre-emption entry, the decision of the facts as to the good faith of the entry, the entryman's residence on the land, and the honesty of his final proofs, rests with the local land officers, subject to appeal or other review.

3. Upon a former appeal it was decided, on demurrer to the complaint, that a ruling of the secretary of the interior denying confirmation of an entry of public lands, on the ground that "the proof submitted by the entryman was fraudulent," was based upon fraud in certain supplemental proofs and not in the original proofs, and that the finding of the local land officers as to the honesty of such original proofs had never been reversed; and it was held that such fraud did not debar the entryman from the benefit of the curative act of Congress of June 3, 1896, providing for confirmation in cases of premature commutation. On this appeal, after a trial, it appears that the particular fraudulent concealment referred to in the former opinion (relating to abandonment and transfer of the land by the entryman) did not exist, but that the supplemental proofs did contain other elements of concealment (relating to the good faith of a reconveyance to the entryman and renewal of his occupancy) which constituted the fraud upon which confirmation of the entry was denied by the land department. *Held*, that this change in the situation does not lessen the binding effect of the decision on the former appeal.

4. Nor is it material, with respect to the binding effect of the former decision, that it then appeared that no issue as to the

*bona fides* of the original proofs was presented before the land department, while it now appears that such issue was raised but was not considered or decided.

5. In a contest with one J. as to the right to enter certain public lands, defendant was defeated and J.'s entry allowed. Afterwards, knowing that plaintiff contemplated purchasing from J., and being inquired of as to J.'s rights and his own claims, defendant stated to plaintiff that he had been fairly beaten in the contest; that he had no claim; that J. had a good claim, which he advised plaintiff to buy; and that if plaintiff would do so, and let him take away some logs already cut, he would make no claim. Plaintiff purchased, relying upon such assurance. Thereafter, in consideration of said logs, defendant made written relinquishment to the United States of all rights in the land. *Held* that, while this did not estop defendant from setting up subsequent conduct of J. which might defeat his title, or from acquiring new title himself, not depending upon facts existing at the time of making such statements to plaintiff, yet defendant was estopped to attack the good faith of J.'s original entry or assert fraud in J.'s commutation proofs made prior to such statements, and if by means of such an attack J.'s entry was afterwards canceled and defendant given a preference right of entry, defendant should be charged as constructive trustee for plaintiff of the title so acquired.

6. A mere preference right of entry, granted after a contest, does not of itself constitute entry of the land.

APPEAL from a judgment of the circuit court for Douglas county: E. W. HELMS, Judge. *Affirmed.*

This is the same action considered upon demurrer to the complaint, reported in 111 Wis. 499, 84 N. W. 27, 85 N. W. 145, 87 N. W. 481. It has since been tried; the evidence upon the trial consisting in the main of the records of the proceedings and profert of the documents referred to in the complaint, with some oral evidence in addition. The findings are substantially in accordance with the facts as set forth in the complaint, so far as the same are material. Certain variances between the facts stated in the complaint and those appearing on the trial and certain additional facts are sufficiently stated in the opinion. Judgment was rendered in favor of the plaintiff on July 10, 1902, adjudging that the legal title held by the defendant, *John F. Hill,* be set over

and transferred to the plaintiff, *Warren E. McCord,* as of the date of the patent from the United States, and that the defendant and all claiming under him be barred from having or claiming any interest, either legal or equitable, and be restrained from setting up or claiming. any right, title, or interest in the land, or in any timber standing or growing thereon on January 12, 1897, or at any time thereafter.   From that judgment the defendant appeals.

For the appellant there was a brief by *W. F. Bailey,* attorney, and *W. H. Stafford,* of counsel, and a supplemental brief and oral argument by *Mr. Bailey.*

For the respondent there was a brief by *Luse, Powell & DeForest,* attorneys, and *Sanborn & Sanborn,* of counsel, and oral argument by *L. K. Luse, A. L. Sanborn,* and *J. B. Sanborn.*

DODGE, J.   Upon a former appeal in this case, considering the complaint upon demurrer (111 Wis. 499, 84 N. W. 27, 85 N. W. 145, 87 N. W. 481), we rendered decision upon certain questions raised as to the rights of the parties, dependent upon facts set forth by the complaint.   Upon familiar principles closely approximating those of *res adjudicata* and not infrequently so called, that decision became the law of this case, both for this court and the lower court, at all subsequent stages, except so far as the situation disclosed by the complaint and considered upon the demurrer was altered in respects material to the conclusions then reached.   *Parker v. Pomeroy,* 2 Wis. 112; *Keystone L. Co. v. Kolman,* 103 Wis. 300, 79 N. W. 224; *Crouse v. C. & N. W. R. Co.* 104 Wis. 473, 480, 80 N. W. 752; *South Bend C. P. Co. v. George C. Cribb Co.* 105 Wis. 443, 81 N. W. 675.   It is therefore necessary, in considering the present appeal, to start with such former decision, and ascertain how far the situation has been modified by the introduction of evidence, and whether such modifications are material.

The propositions decided on the former appeal may be summarized as follows, namely: That in September, 1892, the officers of the land department, in granting Jacobus the privilege of pre-emption entry in commutation of his previous homestead entry, decided that his entries were made in good faith; that he had resided upon the land in compliance with the homestead laws for at least six months prior to said commutation; and that his final proofs, upon which the pre-emption entry was allowed, were not fraudulent. Such entry could not have been allowed in absence of those facts. We next decided, after a careful examination of the proceedings upon the contest raised by *Hill* over the attempt to make supplemental proofs, so far as the complaint set them forth, that neither the local land officers, the commissioner, nor the secretary, had ever reversed this finding of fact, but that the rejection of such supplemental proofs went upon the ground of fraud occurring therein; that under the act of June 3, 1896, such fraud was no obstacle to Jacobus's right to a confirmation of such prematurely allowed entry of September, 1892; hence that the refusal of such confirmation, and the allowance of *Hill's* entry and subsequent patent, were all by mistake of law, and conferred upon the latter merely the empty legal title which the United States at that time held in trust for the holder of the full equitable title which the act of 1896 had conferred upon Jacobus by virtue of the facts so found to exist. Upon the trial no change whatever was made, or even attempted to be made, by evidence as to the situation presented before the land officers at the time of their decision in September, 1892, though some attempt is now made to argue that they neither had the power nor attempted to decide anything then—a position which seems to be not only in contravention of our former decision, but of the holdings of the federal courts that the decision of the facts, under such circumstances, rests with the local land officers, subject to appeal or other review. *Moore v. Robbins,* 96 U. S. 530, 532; *Par-*

*sons v. Venzke,* 164 U. S. 89, 92, 17 Sup. Ct. 27. Hence our former ruling that the facts of good-faith entry, six months' residence, and honest final proofs had been decided to exist by the land officers, must control now.

The decision of the second question, namely, that of the construction to be given the various rulings of the land officers, but especially the final order of the secretary of the interior, of August 4, 1896, denying motion to confirm the entry of September, 1892, rested upon many facts of more or less cogency. In these, as they appeared or were deemed to appear from the allegations of the complaint, there has been some change shown by the evidence. Thus, it is urged by the appellant that the evidence shows facts variant from the assumption contained in the former opinion that Jacobus, in his attempted supplemental proofs, concealed or attempted to conceal from the land officers the fact of his abandonment of the premises as a home, and of the transfer thereof to McLeod and *McCord.* It now appears from the evidence that his affidavits on this occasion did disclose that he temporarily left the land, in the belief that his title was complete, and conveyed the same to McLeod and *McCord,* but that the same had been reconveyed to him and his residence resumed. The only materiality of the fact, assumed or stated in the former opinion, was to establish that there were acts in Jacobus's supplemental proofs which were deemed fraudulent as against the United States, and which could serve as the basis for the decision of the secretary of the interior that confirmation must be refused by reason of fraud in making proofs. Examination now made of the entire record of this contest shows that the fraud which the local land officers pointed out in their opinion, to which reference was made in the affirmance of that opinion by the commissioner of the general land office, and in the affirmance of his decision by the secretary of the interior, was in attempting to impress those tribunals with the idea that he (Jacobus) had in good faith reacquired the title to these

premises, and had renewed his residence thereon for the purpose contemplated by the homestead laws—of making the premises his home—and not for the forbidden purpose of acquiring title for some one else. Thus it is declared by the register and receiver, after reciting these conveyances and Jacobus's conduct, "The bare statement of facts points to the conclusion that the sale of the land in December, 1892, was absolute, and that the subsequent residence of Jacobus on the land was as agent of the transferees, and for the purpose of acquiring title for them." And again, that the various facts recited "show that the land was not reconveyed to Jacobus in good faith, but for the purpose of enabling him to make supplemental proof for the benefit of the grantees. We are of opinion, therefore, that Jacobus's supplemental proof cannot be sustained, and that the entry should be canceled, and a preference right of entry awarded to the contestant here." Hence there is now presented the same circumstance as on the previous appeal, namely, that the supplemental proofs did contain elements of concealment which the land officers deemed fraudulent. That is all that was or is material to the conclusion reached on the former appeal. Counsel for appellant argue that no such fraud existed in fact, because there is not sufficient evidence of any agreement on Jacobus's part at the time of receiving the reconveyance from *McCord* and McLeod that he would again convey the premises to them when he had perfected title. That, however, is immaterial. The question before us is not so much whether fraud existed, as whether it might have been and was decided to exist by the land officials. The record discloses now, as on the former appeal, that there was in the supplemental proofs concealment of a purpose which the land officers decided to exist, and that such concealment was by them decided to constitute a fraud. That, as we held before, was the fraud in making proofs which the register and receiver found to exist and reported in their opinion, which the commissioner af-

firmed, and to which it must be held the secretary of the interior referred when declaring in his order refusing confirmation, August 4, 1896, that such refusal was upon the ground of the practice of fraud in making proofs. The change resulting from the evidence as to the mere subject of the concealment practiced does not modify the situation so as to relieve us from the controlling effect of our former judgment.

Again, it was said in our former opinion that *Hill's* protest against the supplemental proofs made no suggestion "that the original proofs offered and accepted in September, 1892, were characterized by any fraud or fraudulent practice, and no issue as to the *bona fides* of Jacobus in tendering those proofs was presented." This statement was apparently borne out by the allegations of the complaint, but is shown to be incorrect by the introduction in evidence of *Hill's* affidavit of protest, which, while still throwing special weight upon the fraudulent practices occurring thereafter, expressly alleged that "Jacobus and his witnesses testified falsely in making his final proofs;" hence the assumption made in the former opinion that there was no issue upon which the land officers could have inquired or decided with reference to fraudulent practices in the proof of September, 1892, must disappear from present consideration, and those decisions be construed in the light of the fact that an issue was raised by *Hill's* contest, upon which the land officers might have again considered and decided upon the good faith or fraud of the original proofs made in September, 1892, upon which Jacobus was allowed to pre-empt and received his certificate. That no such question was in fact considered, however, seems to be settled by the report of the local land officers, where, after reciting what charges had been made, they declare the issues upon which they deem it necessary to express their opinion as: "(1) Did Jacobus abandon the land? (2) Was the sale of the land to *McCord* and McLeod a bar to the offering of supplemental proof?" We still think it plain, therefore, that no question in-

volving Jacobus's proceedings up to and including the final proof of September, 1892, were passed upon in the consideration of the contest had in 1894. Indeed, this seems to be the view of appellant's counsel as well, for he declares in his brief that "no question of *mala fides* was found in the making of proofs [of September, 1892], nor was the subject considered. Simply, from the evidence, which was the same as the affidavits, they determined the second question which they stated at the outset, that the sale of the land to *McCord* and McLeod was a bar to the offering of supplemental proof." It was for this reason, and for no other, that the local land officers reached the conclusion, and declared their opinion, that the supplemental proof could not be sustained, and that Jacobus's entry should be canceled. The commissioner of the general land office made no order in this connection, except to affirm that opinion. The final order of the secretary of the interior denied confirmation on the ground of practice of fraud in making final proofs, "as fully set forth in your [commissioner's] office decision of January 23, 1895." Thus the final decision of the secretary is, by a series of references, tied back to the practice of fraud in making the supplemental proofs described in the opinion of the local land officers and made the ground of their recommendation against Jacobus. We therefore adhere to the conclusion formerly reached, that nowhere in any of the proceedings subsequent to the commutation proofs was there any reconsideration of the facts then passed on—certainly no reversal or attempted reversal of the decision then necessarily made of the facts essential to the allowance of the pre-emption entry. Those facts entitled Jacobus to confirmation and patent under the act of 1896, thus creating in him full equitable title

2. A further ground which the circuit court found to support its judgment is that the defendant is estopped from making any claim or asserting any title to the land in question as against the plaintiff. The facts whereon this conclusion is

·based are substantially as follows: The defendant, knowing that plaintiff and McLeod had in contemplation the purchase from Jacobus in December, 1892, and being inquired of as to the rights of Jacobus and his own claims, stated that he had been fairly beaten in his contest; that he had no claim; that Jacobus had a good claim, which he advised them to buy; and that if they would do so, and would let him (*Hill*) take away some logs already cut, he would make no claim. Thereafter, in expressed consideration of said logs, he made written relinquishment to the United States of all rights in the land. The trial court finds that plaintiff and McLeod relied on such assurances. In our decision upon the demurrer, we ruled that this could not estop *Hill* from setting up subsequent conduct of Jacobus which might defeat his title, nor from acquiring new title himself, not depending upon facts existing at the time of making the declarations. That decision is, of course, the law of this case. Upon the trial it appeared, however, that he did not content himself with either opposing Jacobus's patent or basing his own claims upon such subsequent facts. He attacked the good faith of Jacobus's original entry, and asserted fraudulent practices and false swearing in his proofs for commutation made in September, 1892, and alleged his own settlement on the land in July, 1891. If, therefore, we should concede appellant's contention that a patent was denied Jacobus and his entry canceled because, upon *Hill's* said contest, it was made to appear that the original entry was in bad faith and the commutation proofs fraudulent, whereby he was accorded preference right of entry, it would seem obvious that *Hill's* title has been acquired by virtue of acts and claims on his part wholly inconsistent with his assertions made to the plaintiff, in reliance on which the latter paid Jacobus $4,300 and gave *Hill* a quantity of logs. We cannot doubt that the doctrine of estoppel precludes him from such change of front to his benefit and respondent's injury. *Vilas v. Mason,* 25 Wis. 310; *Kingman v. Graham,* 51 Wis. 232,

248; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328; *Leather M. Bank v. Morgan,* 117 U. S. 96, 109, 6 Sup. Ct. 657; *Beatty v. Sweeney,* 26 Mich. 217; *Mayer v. Erhardt,* 88 Ill. 452; *Hendricks v. Kelley,* 64 Ala. 388; *Mayer v. Ramsey,* 46 Tex. 371; *Downer v. Flint,* 28 Vt. 527; *Pendleton v. Grannis,* 14 Land Dec. Dep. Int. 381. When appellant declared that Jacobus's claim was a good one and encouraged respondent to purchase upon such supposition, and the latter acted upon such assurances, he acquired a right, as against *Hill,* that he should not assert the contrary, at least upon the basis of any facts then existing. While this right could not be urged against the United States to prevent it from reclaiming the land, it is enforceable against *Hill* to prevent him from profiting at the expense of respondent by means of denial of the fact declared by him to exist; and a court of equity can require him to hold any benefits acquired by such means as constructive trustee for the benefit of plaintiff, to the extent, at least, of the rights which the latter would have acquired had the repudiated assertions been true. We concur in the conclusions of the trial court that on this ground, as well, appellant must be charged as constructive trustee of the whole title for the respondent, and decreed to convey it to him, if the construction we have placed on the various decisions of the land office be erroneous and that contended for by appellant be correct.

3. The court below also decided, as a basis for the judgment, that Jacobus, having made application to enter this land in February, 1891, and having established his residence thereon at that time and continued it up to September 20, 1892, was entitled to commute into a pre-emption entry at that time, not only under the provisions of sec. 2301, R. S. of U. S., as amended in 1880, but also under the act of March 3, 1891, which required fourteen months' residence "after the date of entry." This conclusion was reached by applying the rule contended for by the plaintiff upon the former appeal, and

mentioned but not decided in the opinion upon rehearing, to the effect that when an applicant, having the right to enter, completes all the acts required of him to effect that result, delay of the land officers to note on their books such entry cannot affect his rights, whether such delay results from hearing and deciding the contest, or from any other cause; that a rightful application to enter is tantamount to entry, and the real date of applicant's entry is when he completes all the acts on his part necessary thereto. We find ourselves unable to agree with the trial court that there is any showing of the conditions to which this rule is applicable. It is alleged in the complaint that Jacobus made application to enter this land in February, 1891, but the fact is not proved. It does appear, however, from the order of the commissioner of the general land office of April 29, 1892, that *Hill* made application to locate the same under his military warrant, and that Jacobus contested that application. The final order upon that proceeding was that the contest be sustained, and that *Hill's* declaratory statement be canceled, and that Jacobus be allowed, within thirty days, under a preference right, to enter the land—not that any prior application of his be allowed. Thereupon Jacobus did, on July 6, 1892, make application to enter, which application was allowed, and the entry based on it constituted the basis for his subsequent commutation and pre-emption in the September following. Thus it fails to appear that his rights arise out of an application to enter filed in February, 1891, allowed at a later date, but merely that during the period prior to July, 1892, he had settled on the land and contested *Hill's* application therefor, thus securing a mere preference right, which, as decided upon the former appeal, did not, of itself, constitute entry.

Appellant assails many of the findings of fact, some of which we confess are not very material, and therefore the assault thereon need not be considered. Amongst others, how-

ever, is the finding by the trial court, as an independent fact, that Jacobus's original proofs were honest and free from fraud, and preceded by more than fourteen months of actual residence upon the land as and for a homestead. It suffices to say that upon these questions the evidence is at least fairly conflicting, and we are unable to say that there is any clear preponderance against this finding, which, in the view we have taken of the decisions of the land officers, is not very material, unless it should be deemed essential to the standing of the plaintiff in a court of equity to invoke its aid to charge the defendant with a trust in his favor.

The finding that *McCord* and McLeod purchased the interest of Jacobus in good faith is also assailed, but here, also, we are satisfied that the evidence is sufficient to support the finding. Indeed, there is very little to throw doubt upon their good faith in the original purchase in December, 1892, to which they both testified; and the transactions are sufficient to warrant the inference drawn by the trial court, and also, apparently, drawn by the land officers, that the reconveyance to Jacobus in September, 1893, and the taking of a mortgage from him, followed later by conveyance back to *McCord* and McLeod, were all colorable and merely formal; leaving them at all times, as between Jacobus and themselves, the real owners of his equitable interest in the land, so that their present title really dates from the original conveyance to them in December, 1892.

The finding that *McCord* and McLeod relied on *Hill's* statements to them with reference to his own and Jacobus's claims against the land at the time when they purchased from the latter is also assailed by appellant. The finding has support in the direct testimony of both McLeod and *McCord*, which stands almost without contradiction, save for a somewhat ambiguous answer made by *McCord* upon examination before trial—certainly not sufficient to constitute that overwhelming

preponderance against his direct testimony upon the trial which could justify us in repudiating the finding by the circuit court.

We therefore reach the conclusion that upon either the first or the second of the grounds above discussed, in the alternative, the judgment appealed from is correct.

*By the Court.*—Judgment affirmed.

MARSHALL, J., took no part.